UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONICA MAPP | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 13-329 (RCL) |
| DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Monica Mapp, a former probation officer for the District of Columbia Superior Court, filed suit against the District alleging multiple counts of discrimination in violation of the Family and Medical Leave Act, the D.C. Family and Medical Leave Act ("DCFMLA"), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the D.C. Human Rights Act ("DCHRA"). The District has moved to dismiss the DCHRA claims—Counts IX, X, and XIII of the Amended Complaint—on the ground that the DCHRA, which prohibits employment discrimination, does not apply to the D.C. Superior Court.[1] For the reasons explained herein, the Court agrees and therefore GRANTS the District's motion.

### I. LEGAL PRINCIPLES

From its inception in 1836 until 1970, the United States District Court for the District of Columbia served the dual roles of a local and federal court, "hear[ing] and decid[ing] the full range of local common law and equitable questions, in addition to its regular calendar of federal questions and diversity actions." *Shutack v. Shutack*, 516 F. Supp. 219, 221 (D.D.C. 1981). In

---

[1] The Court's November 25, 2013, Opinion [17] provided a lengthy account of the facts the case. For purposes of the present opinion, the Court will highlight only those facts relevant to the defendant's motion.

1970, Congress enacted the District of Columbia Court Reorganization Act, Pub.L.No.91-358, Title I, 84 Stat. 475, which

> reorganized the court system in the District of Columbia and established one set of courts in the District with Art. III characteristics and devoted to matters of national concern [and] created a wholly separate court system designed primarily to concern itself with local law and to serve as a local court system for a large metropolitan area.

*Palmore v. United States*, 411 U.S. 389, 408 (1973). In addition to establishing the D.C. Superior Court and the D.C. Court of Appeals, the Reorganization Act provided that a Joint Committee on Judicial Administration "shall have responsibility within the District of Columbia court system for . . . [g]eneral personnel policies, including those for recruitment, removal, compensation, and training." D.C. Code § 11-1701. The Act also stated that "[a]ppointments and removals of court personnel shall not be subject to the laws, rules, and limitations applicable to District of Columbia employees." D.C. Code § 11-1725.

Shortly thereafter, in 1973, Congress furthered its goal of an independent local government for the District by enacting the Home Rule Act, which ceded some federal control of the city to an elected mayor and city council. Congress was clear, however, that the local Superior Court and Court of Appeals "shall continue as provided under the District of Columbia Court Reorganization Act of 1970." D.C. Code § 1-207.18. Moreover, Congress explicitly forbade the new council from enacting "any act, resolution, or rule with respect to any provision of [the Court Reorganization Act] (relating to organization and jurisdiction of the District of Columbia courts)." D.C. Code § 1-206.02.

Against this background, the D.C. City Council enacted the D.C. Human Rights Act of 1977 to "secure an end in the District of Columbia to discrimination for any reason other than that of individual merit." D.C. Code § 2-1401.01. To this end, the DCHRA established Office

2

on Human Rights to receive, review, investigate, and mediate employment discrimination claims in the District. D.C. Code § 2-1411.03. If the Office finds probable cause and is unable to mediate a violation, the complaint is forwarded to the Commission on Human Rights, an "impartial forum for the hearing and deciding of cases of unlawful discrimination in employment." D.C. Code § 2-1404.02. Both the Office and the Commission are executive agencies and have broad power to remedy discrimination in all aspects of employment (e.g., appointments, removal, compensation, training, etc.). The District's motion raises the question whether this broad power fatally conflicts with the Reorganization and Home Rule Acts. The Court holds that it does, and accordingly, that the DCHRA is inapplicable to employees of the D.C. Superior Court and the D.C. Court of Appeals.

II.     ANALYSIS

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). Here, the statutory language is plain and unambiguous: The D.C. City Council may not regulate matters covered by the Reorganization Act, which expressly reserves management of personnel policies to the Joint Committee and explicitly exempts appointments and removals of court personnel from regulations generally applicable to District employees. Where, as here, the statutory language is clear, "that is the end of judicial inquiry in all but the most extraordinary circumstances." *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002) (internal quotations omitted). None of the four arguments raised by Ms. Mapp are sufficiently extraordinary to merit departure from the unambiguous words of Congress.

3

*First*, the plaintiff argues that the exemptions of the Court Reorganization Act are limited to "procedural and administrative protections afforded to employees of the District of Columbia Government." Pl.'s Opp. 4. But this argument is defeated by the absence of any limiting language in the statute.

*Second*, Ms. Mapp asserts that exempting Superior Court employees from the DCHRA "is the province of the legislative authority for the District of Columbia, the City Council, not this Court." Pl.'s Opp. 4. Not so. The legislative power of the City Council is subordinate to the sovereign power of the Congress, *District of Columbia v. John R. Thompson Co.*, 346 U.S. 100, 107 (1953), and as such, the Council must legislate within the boundaries drawn by Congress. Any legislation concerning court personnel policies exceeds those boundaries and is therefore invalid.

*Third*, Ms. Mapp argues that the parenthetical in the Home Rule Act, forbidding "any act, resolution, or rule with respect to any provision of [the Court Reorganization Act] (*relating to organization and jurisdiction of the District of Columbia courts*)," D.C. Code § 1-206.02 (emphasis added), limits the prohibition on council action to regulations regarding organization and jurisdiction. Adopting this interpretation would render the statutory scheme regarding home rule in the District inconsistent. On one hand, the Reorganization Act would reserve regulation of court personnel for the Joint Committee, while the Home Rule Act would permit regulation of court personnel by the Office and Commission on Human Rights. The Supreme Court has rejected internally inconsistent statutory interpretations, instructing that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Courts should therefore interpret statutory language "as a symmetrical and coherent regulatory scheme,

4

and fit, if possible, all parts into an harmonious whole." *Id*. (internal quotations and citations omitted). In addition to providing a harmonious interpretation of the statutory scheme, reading the parenthetical as explanatory rather than restrictive comports with the holding of other courts that "relating to" parentheticals are "descriptive and not limiting." *Garrido-Morato v. Gonzales*, 485 F.3d 319, 322 n.1 (5th Cir. 2007); *see also, e.g.*, *United States v. Abdur-Rahman*, 708 F.3d 98, 100 (2d Cir. 2013).

*Finally*, the plaintiff's concern that without the DCHRA, the District's courts would escape anti-discrimination regulation is diminished by the fact that local courts remain subject to Title VII of the Civil Rights Act of 1964, which makes it unlawful for "an employer . . . to fail or refuse to hire . . . or otherwise to discriminate against any individual . . . because of such individual's . . . gender." 42 U.S.C. § 2000e-2(a)(1)...

In sum, the Court holds that the Court Reorganization Act and the Home Rule Act prohibit the D.C. City Council from regulating the personnel policies of D.C. courts. The DCHRA is therefore inapplicable to court employees, and accordingly, Counts IX, X, and XIII of the Amended Complaint are dismissed.

The Court notes that the same argument advanced as to the DCHRA counts may be equally applicable to the plaintiff's DCFMLA claims. If the District intends to advance this argument, it is directed to do so within ten days of this opinion. Moreover, the Court GRANTS the District's pending Motion to Stay, *Nunc Pro Tunc*, the Deadline for Filing An Answer to the Amendment Complaint [24]. The District must file its answer within ten days of this opinion.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on April 28, 2014.